E-FILED
Tuesday, 01 March, 2005, 11:26:36 AM
Clerk, U.S. District Court, ILCD

# United States District Court

CENTRAL DISTRICT OF ILLINOIS

FILED
OCT 17 2001
JOHN M. WATERS, Clerk
U.S. DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

UNITED STATES OF AMERICA
V.

JAMES A. NICHOLS a/k/a
JESSE JAMES

**CRIMINAL COMPLAINT**

CASE NUMBER O1-3070-M

(Name and Address of Defendant)

I, the undersigned complainant being duly sworn state the following is true and correct to the best of my knowledge and belief. On or about __October 23, 2000__ in __Sangamon__ county, in the __Central__ District of __Illinois__ defendant(s) did, knowingly distribute cocaine base (crack)

in violation of Title __21__ United States Code, Section(s) __841(a)(1)__

I further state that I am a(n) __FBI Task Force Agent__ and that this complaint is based on the
Official Title
following facts:

see attached Affidavit

Continued on the attached sheet and made a part hereof:   ☒ Yes   ☐ No

s/ Wendell K. Banks
Signature of Complainant

Sworn to before me and subscribed in my presence,

10/17/01 1:55 pm                          at   Springfield, Illinois
Date                                           City and State

Honorable Byron G. Cudmore
United States Magistrate Judge                 s/ Byron G. Cudmore
Name & Title of Judicial Officer               Signature of Judicial Officer

1

STATE OF ILLINOIS )
) ss
COUNTY OF SANGAMON )

# AFFIDAVIT

I, Wendell K. Banks, being first duly sworn state, hereby state:

INTRODUCTION

1. I am a Detective with the Springfield, Illinois Police Department, and have been so employed for six years. I am currently designated by the Federal Bureau of Investigation as a Special Federal Officer with the Springfield Violent Crime Strike Force. In the course of my employment with the Springfield Police Department I have received extensive formal training in the methods and practices of drug traffickers, and I have had over 30 conversations with drug traffickers themselves in the course of investigative interviews and covert activities. I have also participated in the execution of about 50 search warrants relating to illegal drug trafficking.

2. This affidavit is made in support of a complaint charging JAMES A. NICHOLS, date of birth ███████, 1979, with Distribution of Cocaine Base (crack) in violation of Title 21, United States Code, Section 841 (a) (1). A warrant for the arrest of JAMES A. NICHOLS is requested.

3. I am familiar with the following facts based upon my own personal investigation or information officially furnished to me by other law enforcement agents, witnesses, or confidential sources.

EVIDENCE

4. On October 23, 2000, at approximately 1:15 p.m., Special Federal Officer (SFO) STEPHEN G. WELSH and I (SFO WENDELL K. BANKS) met with Durrell Alexander for the

purpose of making a controlled buy of crack cocaine from JAMES A. NICHOLS, also known as (A.K.A.) "JESSIE JAMES." Alexander was searched for money and or contraband with negative results. Alexander was outfitted with a radio frequency (RF) transmitter and recording device. He was then provided with $2000.00 United States Currency/Official Advanced Funds, which was pre-recorded. Alexander then made a recorded telephone call to NICHOLS' cellular telephone (217-███████. Further investigation has revealed that the cellular telephone number 217-███████ was issued to JAMES NICHOLS, ███████, Springfield, Illinois, 62703-3619, social security account number ███████, date of birth ███████ 1979. Alexander stated he needed a "couple" and NICHOLS agreed to meet him.

5.     Alexander was taken to the area of 9th Street and North Grand Avenue. When I pulled into the parking lot of the McDonalds restaurant, I observed a gold Honda in the parking lot. The Honda was driven by a black male known to me as JAMES A. NICHOLS. The passenger was a young black male that could not be identified at that time. SFO WELSH pulled to the back of the parking lot and Alexander exited the vehicle. Alexander walked directly into the McDonalds restaurant. SFO WELSH and I could hear NICHOLS talking to Alexander inside the McDonalds via the RF transmitter. I am familiar with NICHOLS' voice and was able to identify NICHOLS as the person speaking with Alexander. Alexander and NICHOLS then left the restaurant and both got into NICHOLS' car. NICHOLS and Alexander then drove to 11th Street and North Grand Avenue. SFO WELSH and I could hear the conversation via RF transmitter. NICHOLS stated, "all I got is like two zones, and they ain't even twenty-four, they twenty-two." When asked the price, NICHOLS replied, "like seventeen fifty ... I mean 'cause it ain't none of that bullshit, G." Alexander agreed to go with NICHOLS to get the crack cocaine.

6.  While Alexander was with NICHOLS, he contacted SFO Welsh by cell phone and conveyed to Welsh that Alexander and NICHOLS were driving past the Salvation Army. SFO WELSH and I drove south on 11th street. SFO WELSH and I could still hear the conversation via the RF transmitter. SFO WELSH drove to the 2100 block of S. 13th Street, but to avoid detection, did not drive past NICHOLS' residence, which is located a█████████ Street. After several minutes, Alexander left with NICHOLS and the other black male. SFO WELSH then called Alexander again by cellular telephone and Alexander stated they were leaving the pizza place. Both SFO WELSH and I observed the gold colored Honda leave Shepardo's Restaurant located at 11th Street and Ash Street. NICHOLS drove north on 11th Street to North Grand Avenue. Alexander exited the vehicle and NICHOLS drove east on North Grand Avenue.

7.  SFO WELSH and I picked up Alexander. The RF transmitter and recording device were turned off and removed from Alexander. Alexander provided me with two plastic bags which contained a whitish rock substance. Alexander also returned $246.00 of the original official advanced funds. A second search of Alexander revealed no contraband.

8.  Alexander stated that after meeting with a black male known to him as JAMES NICHOLS at McDonald's, he went with NICHOLS to NICHOLS' residence located south of Ash Street on 13th Street. He stated NICHOLS went into a bedroom and when he came out he had two plastic bags which contained a whitish rock substance. Alexander stated that he gave NICHOLS the $1750.00 which I had previously provided to him, and then NICHOLS gave Alexander the two bags of whitish rock substance, which he later turned over to me. I have

listened to the recording and it is consistent with Alexander's statements. On the recording, Alexander can be heard stating to NICHOLS, "1750 right," to which NICHOLS stated "uh-hm."

9.  Alexander is now deceased. At the time of the transaction, I know that Alexander had a criminal history, including convictions for a drug offense, obstructing a police officer and larceny. Alexander was cooperating with the government because he believed that there was a pending criminal case against him and hoped that he would received favorable treatment in connection with any criminal case.

10. The whitish rock substance which was purchased by Alexander and the plastic bags containing the whitish rock substance were booked into evidence at the Springfield Police Station and sent to the ILLINOIS STATE POLICE FORENSIC SCIENCE LABORATORY where a Forensic Scientist analyzed the substance and determined the total contents of both to be 43.4 grams of cocaine base (crack).

11. A check of NICHOLS' criminal history indicates he has a prior felony conviction for Manufacture Delivery of a Controlled Substance and received 180 days in jail and two years probation.

12. During an interview of Homer Harris conducted on June 4, 2001, Harris stated in the summer of 2000, he purchased 4 ½ ounces from NICHOLS on four or five separate occasions. Harris further stated that towards the end of 1998 until Harris' arrest in 2000, NICHOLS was one of Harris' main customers for the purchase of cocaine.

13. During an interview of Robert Martin, Jr. on March 8, 2001, Martin stated that NICHOLS purchased 4 ½ to 13 ounces of cocaine from Martin on several occasions.

14. During an interview of Alfred Reeves on January 9, 2001 and February 23, 2001, Reeves stated that he had sold approximately 1/4 - ½ ounce of cocaine to NICHOLS on one occasion approximately four years ago.

15. During an interview of Danny Morgan on November 16, 2000 and March 1, 2001, Morgan stated Homer Harris would purchase a large quantity of cocaine which would be distributed to other individuals in Springfield, Illinois including NICHOLS. Morgan stated that on one occasion he had observed NICHOLS purchase 4½ ounces of cocaine from Homer Harris.

16. During an interview of Bernardo Shanklin on January 16, 2001, Shanklin stated that he had sold NICHOLS cocaine in the past and had personal knowledge that NICHOLS had purchased cocaine also from Homer Harris (Shanklin's main supplier). Shanklin further stated that he, NICHOLS and others would convert the cocaine to crack cocaine.

17. During an interview of Leonski Higgins on January 10, 2001, Higgins stated that he had personal knowledge that Homer Harris (Higgins' main supplier) supplied cocaine to NICHOLS on several occasions.

18. During an interview of Jarrod Hammonds on February 1, 2001, Hammonds stated that he has known NICHOLS since late 1997 - early 1998. Hammonds further stated that he had purchased 1/4 ounce of crack cocaine for $300 from NICHOLS on three to four occasions in 1998. Hammonds also stated that he had purchased ½ ounce of crack cocaine for $500 from NICHOLS in 1998. Hammonds stated he did not buy from NICHOLS again until sometime in 2000 when he purchased 1/4 ounce of crack cocaine for $250 on two occasions.

19. During an interview of Robert Wilson on September 28, 2000, Wilson stated that he had known NICHOLS for approximately four years and had purchased crack cocaine from

NICHOLS at least once a week since the end of 1999 through 2000. Wilson stated that he had purchased ½ ounce of crack cocaine for $475 from NICHOLS on three occasions; 1/4 ounce of crack cocaine for $250 from NICHOLS on eight occasions; and 1/8 ounce of crack cocaine for $125 from NICHOLS on thirty occasions.

20. All of the above persons interviewed were or are federal defendants charged with a drug offense and are cooperating with the government with the hope of receiving favorable treatment in their respective cases.

s/ Wendell K. Banks

Wendell K. Banks

FBI Special Federal Officer

Subscribed and sworn to before me this 17 day of Oct, 2001. 1:55pm

s/ Byron G. Cudmore
_____
BYRON G. CUDMORE

UNITED STATES MAGISTRATE JUDGE